**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville
JUL 26 2017
JAMES N. HATTEN, Clerk
By: Deputy Clerk

DAVID JUSTIN FREEMAN,

Plaintiff,

v.

GERALD COUCH, et al.,

Defendants.

CIVIL ACTION NO.
2:16-CV-186-RWS

## ORDER

This case comes before the Court on Defendants Couch, Ashley, Smith, Watson, Edwards, and Bryant's Motion for Judgment on the Pleadings [14]. After reviewing the record, the Court enters the following Order.

### Background

This case arises out of Plaintiff's incarceration at the Hall County Jail from August 3, 2014 through August 5, 2014. (Compl., Dkt. [1] ¶¶ 7, 25.) According to Plaintiff, after arriving at the jail, he was lifted by Defendants, with the exception of Sheriff Couch, and was held against a wall with a taser against the back of his neck. (Id. ¶ 20.) The taser, however, was not deployed. Plaintiff was then ordered to strip out of his clothes and was given a pair of

orange boxer-shorts. (Id. ¶ 21.) The shorts were too large, and he could not keep them on. (Id.) He claims he stayed naked for approximately one hour. (Id.)

Plaintiff was placed in a holding cell, which had a toilet with a water fountain attached. (Id. ¶ 22.) Nothing else was in the cell. (Id.) The Complaint is unclear whether Plaintiff never received bedding or a blanket the entire time he was incarcerated, or whether he received bedding after midnight the first night he was in the jail. (Id. ¶¶ 23, 26.) Plaintiff was not able to sleep during his incarceration because the air conditioning was going "full blast," he did not have any blankets, and the florescent lights remained on all night. (Id. ¶¶ 23, 24, 26.) Plaintiff was released on August 5, 2014. (Id. ¶ 25.)

On August 2, 2016, Plaintiff filed the Complaint [1], alleging claims under 42 U.S.C. § 1983 for deprivation of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. (Id. ¶ 1.) He also claimed violations of Article I, Section I, Paragraph XVII of the Constitution of the State of Georgia, and "tortious conduct under state law." (Id.) In a later filing, Plaintiff clarified that his state law claims are for assault, breach of Defendants' duty to treat a prisoner humanely and refrain from oppressing him, and breach

of Sheriff Couch's duty to provide blankets and clothing to prisoners. (Pl.'s Resp. to Mot. for J. on the Pleadings, Dkt. [20], at 17.) Defendants Couch, Ashley, Smith, Watson, Edwards, and Bryant ("Defendants") filed their Motion for Judgment on the Pleadings [14] on December 14, 2016. Defendants Lusk, Bustamante, and Coulsay were not included.

As an initial matter, the Court notes that it issued an Order [10] on November 28, 2016 granting Plaintiff an extension through December 29, 2016 to serve all defendants. Plaintiff has still not served three of the defendants. In light of Plaintiff's failure to serve Defendants Lusk, Bustamante, and Coulsay, the claims against them are **DISMISSED**.

## Discussion

### I. Legal Standard

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings [14]. "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (citing Fed. R. Civ. P. 12(c)). The legal standard for assessing a motion for judgment on the



AO 72A
(Rev.8/82)

pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). Id.; Roma Outdoor Creations, Inc. v. City of Cumming, Ga., 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008). That is, the Court must "accept all facts in the complaint as true and view them in the light most favorable to the plaintiffs." Hardy v. Regions Mortgage, Inc., 449 F.3d 1357, 1359 (11th Cir. 2006) (quotation and citation omitted).

## II. Analysis

### A. Qualified Immunity for § 1983 Claims

Defendants argue that they are protected from suit in their individual capacities by qualified immunity. "The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation." McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007) (internal quotation marks omitted). Officials seeking qualified immunity must first establish that they were acting within their discretionary authority when the alleged constitutional violation occurred. Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291 (11th Cir. 2009). If so, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. Id.; McClish, 483 F.3d at 1237.



AO 72A
(Rev.8/82)

For each claim, Plaintiff must make two showings when challenging Defendants' qualified immunity defenses. First, Plaintiff must show that Defendants' conduct violated a constitutional right. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Second, Plaintiff must show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). The court is free to begin the qualified immunity analysis with either inquiry. See Pearson, 555 U.S. at 231.

A right is clearly established if it would have been clear to a reasonable officer that the officer's conduct was unlawful. See, e.g., Saucier, 533 U.S. at 201-02; Fils v. City of Aventura, 647 F.3d 1272, 1287 (11th Cir. 2011). The "salient question" is whether the state of the law gave the defendant "fair warning" that his alleged conduct was unconstitutional. See Hope v. Pelzer, 536 U.S. 730, 741 (2002). The Court "looks only to binding precedent — cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose — to determine whether the right in question was clearly established at the time of the violation." Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011).

Plaintiff alleges violations of procedural and substantive due process under the Fourteenth Amendment. The facts alleged do not implicate procedural due process, and it appears that Plaintiff's claims under the Fourteenth Amendment are all substantive due process claims. The Court will therefore limit its analysis to substantive due process.

*i. Use of Force*

Plaintiff alleges that Defendants acted with excessive force when they lifted him, held him against a wall, and held a taser up to his neck. The first step in the qualified immunity analysis is to determine whether Defendants were acting within their discretionary authority at the time of the alleged violation. In the qualified immunity context, a government employee acted within his discretionary authority when the acts were "of a type that fell within the employee's job responsibilities." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). "Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Id.

Defendants work in a jail, and it is part of their job to manage the facility

and keep everyone safe. This job sometimes requires using force or the threat of force against detainees in order to address disturbances and maintain order. See Skrtich v. Thornton, 280 F.3d 1295, 1302-03 (11th Cir. 2002) (finding corrections officers acted within their discretionary authority when they shocked and beat inmate while extracting him from his cell). Defendants' actions were within their discretionary authority, thus the burden shifts to Plaintiff to show Defendants are not entitled to qualified immunity.

The next issue is whether the right was clearly established at the time of the violation. Plaintiff argues that the proper standard for determining if force against a pretrial detainee is excessive under the Fourteenth Amendment is objective reasonableness. Plaintiff correctly states that this is the current standard. See Kingsley v. Hendrikson, 135 S.Ct. 2466, 2473 (2015). The alleged excessive force in the present case, however, occurred on August 3, 2014. (Compl., Dkt. [1] ¶¶ 18-20.) Only the state of the law at the time of the violation is relevant for determining whether the right was clearly established. Prior to the Kingsley decision in 2015, the standard for excessive force under the Fourteenth Amendment was whether the defendant applied the force "maliciously or sadistically for the very purpose of causing harm." Bozeman v.

Orum, 422 F.3d 1265, 1271 (11th Cir. 2005), abrogated by Kingsley v. Hendrikson, 135 S.Ct. 2466 (2015). This "malicious or sadistic" standard is the correct standard to apply to determine if the right was clearly established at the time of the violation in 2014. See Jacoby v. Baldwin Cnty., 666 F. App'x 759, 765 (11th Cir. 2016) (recognizing that the Kingsley decision was issued after the constitutional violation took place, so to determine whether the right was clearly established, it was necessary to look to pre-Kingsley case law, which applied the old "sadistic or malicious" standard for excessive force).

There is nothing malicious or sadistic about Defendants holding up a taser to Plaintiff without ever actually deploying the taser, or about lifting him and holding him against a wall. While Plaintiff points to a number of cases, they fail to clearly establish the unlawfulness of Defendants' actions. Although "there need not be a case 'on all fours' with materially identical facts" for a right to be clearly established, officials do need to have "'reasonable warning that the conduct at issue violated constitutional rights.'" Holloman, 370 F.3d at 1277 (quoting United States v. Lanier, 520 U.S. 259, 269 (1997)). The Eleventh Circuit cases Plaintiff cites are about police officers pointing guns at people or actually tasing an individual multiple times. See Croom v. Balkwell,



AO 72A
(Rev.8/82)

645 F.3d 1240, 1253 n.17 (11th Cir. 2011); Olivier v. Fiorino, 586 F.3d 898, 903 (11th Cir. 2009). The differences between a gun and taser, and the differences between holding a taser and actually deploying a taser, are too significant for these precedents, even taken together, to clearly establish Defendants' conduct as unlawful. Therefore, these cases do not clearly establish that holding a taser up to a pretrial detainee without ever actually deploying is a constitutional violation.

Plaintiff also cites Davis v. Locke to show that Defendants lifting Plaintiff was a violation of clearly established law. 936 F.2d 1208 (11th Cir. 1991). In Davis, the inmate was confined in a dog cage in the back of a pickup truck with his hands shackled behind his back. Id. at 1210. The guards grabbed him by the ankles and pulled him from the dog cage and off the back of the truck. Id. Held only by his ankles and without his arms free to break his fall, the inmate fell onto his head. Id. The Eleventh Circuit affirmed that the guards violated the inmate's constitutional rights. Id. at 1214. The inmate was confined, so it was reasonable to conclude the inmate posed no continuing threat to the guards and that the use of force was excessive. Id. at 1213.

Davis does not clearly establish that all lifting of detainees is



AO 72A
(Rev.8/82)

unconstitutional, and it does not clearly establish so in this case. There are no details about the way in which Plaintiff was lifted beyond that he was "lifted" and "held against a wall." (Compl., Dkt. [1] ¶ 20.) There are no facts to suggest that he was lifted in such a way that he would unavoidably fall headfirst to the ground, as was the case in Davis. Based on the facts in Plaintiff's Complaint [1], Davis does not clearly establish the unconstitutionality of Defendants lifting Plaintiff against the wall.

The rights at issue were not clearly established, so Plaintiff fails to meet his burden of showing qualified immunity is inappropriate. Defendants sued in their individual capacities are entitled to qualified immunity on the excessive force claims.

*ii. Conditions of Confinement*

Under the Due Process clause, a pre-trial detainee may not be punished. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Conditions of confinement of a pre-trial detainee are unconstitutional if they amount to punishment. Id. "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538. If the restriction or condition is reasonably related to a legitimate



AO 72A
(Rev.8/82)

governmental objective, it does not amount to punishment. Id. at 539.

Plaintiff complains about florescent lights that were left on all night, lack of bedding, and inadequate clothing. Lighting within the jail as well as distribution of blankets and clothing are within the job responsibilities of Defendants and thus within their discretionary authority. To show Defendants are not entitled to qualified immunity, Plaintiff must show that Defendants violated a right that was clearly established at the time. None of the conditions on their face clearly amount to punishment because the government has legitimate interests in managing the facility. Id. at 540 ("The effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment."). Considering the factual and non-mechanical nature of the inquiry whether conditions amount to punishment, there would have to be cases with very similar facts in order to give Defendants reasonable warning that their actions were unlawful.

As for the lights being left on all night, Plaintiff cites some cases from other circuits, which have no bearing on whether the right was clearly



AO 72A
(Rev.8/82)

established in the Eleventh Circuit. See Coffin, 642 at 1013 ("Our Court looks only to binding precedent . . . to determine whether the right in question was clearly established at the time of the violation."). The binding precedent Plaintiff does cite to is only about light that was lacking (in conjunction with a number of other "dungeon"-like conditions) and does not clearly establish the unconstitutionality of lights left on all the time. Miller v. Carson, 563 F.2d 757, 759-60 (5th Cir. 1977). Further, in Wilkinson v. Austin, the Supreme Court stated that a light that remained on in inmates' cells at all times "may well be necessary and appropriate." 545 U.S. 209, 224 (2005). Thus, being free from light at nighttime was not a clearly established constitutional right.

A right to proper bedding is also not clearly established in the Eleventh Circuit. Plaintiff cites to Chandler v. Baird, which states that "the right of a prisoner not to be confined in a cell at so low a temperature as to cause severe discomfort and in conditions lacking basic sanitation was well established." 926 F.2d 1057, 1065-66 (11th Cir. 1991). In that case, the temperature was as low as sixty degrees, and Plaintiff had no bedding nor clothes except undershorts. Id. at 1063. It is not clearly established that temperatures warmer than this would be "so low a temperature as to cause severe discomfort." In

Plaintiff's Complaint he does not specify the temperature of the room, he merely states that "it was hot outside" and "the air conditioning was going full blast." (Compl. ¶ 23.) Further, in Chandler, the court recognized that there are cases in which it is appropriate to deprive a pretrial detainee of bedding. See McMahon v. Beard, 583 F.2d 172, 175 (5th Cir. 1978) (finding no constitutional violation in depriving a pretrial detainee with suicidal tendencies of bedding and clothing).

Further, the Eleventh Circuit later ruled that "temporary placement in disciplinary isolation for the legitimate purpose of quieting [a pretrial detainee] was not unconstitutional, *even without bedding*, and did not violate any clearly established law." Wilson v. Blankenship, 163 F.3d 1284, 1295 (11th Cir. 1998) (emphasis added). The case law consists of cases going both ways on the right to bedding and establishes that there are reasons for which a prison administrator can constitutionally deprive a detainee of bedding. Therefore, it would not have been clear to a reasonable officer that his depriving Plaintiff of blankets was unlawful, and this right was not clearly established at the relevant time.

Finally, Plaintiff fails to cite any cases clearly establishing that

Defendants violated Plaintiff's constitutional rights when they gave him shorts that were too large, leaving him naked for approximately one hour. In Goodson v. City of Atlanta, the plaintiff was not given a change of clothes for several days, as opposed to the hour that Plaintiff in the present case was without clothes. 763 F.2d 1381, 1385. The Eleventh Circuit in Goodson affirmed the district court's decision that the prisoners' constitutional rights had been violated based on a number of "deplorable, horrible conditions" that existed in the prison, including feces on the floor and lack of medical attention resulting in an inmate's death. Id. at 1387-88. The failure to provide a change of clothes was not the driving force of the decision, and even if it were, the period the plaintiff was without a change of clothes distinguishes it from Plaintiff's circumstances. Goodson does not clearly establish the unconstitutionality of failing to immediately provide Plaintiff with properly fitting clothing.

Plaintiff also cites Chandler, where the plaintiff was clothed only with undershorts for a period of sixteen days and complained additionally of "filth on the cell's floor and walls; deprivation of toilet paper for three days; deprivation of running water for two days; lack of soap, toothbrush, toothpaste,



AO 72A
(Rev.8/82)

and linen." Chandler, 926 F.2d at 1059, 1063. The Eleventh Circuit was principally concerned with the cell temperature and provision of hygiene items in determining the unconstitutionality of the defendants' actions. Id. at 1065. Chandler does not clearly establish the unconstitutionality of failing to provide adequate clothing in the present case because the inmate was deprived of clothing for a much longer period than Plaintiff and additionally lacked the "basic elements of hygiene." Id. at 1064 (quoting Novak v. Beto, 453 F.2d 661, 665 (5th Cir. 1971)).

Furthermore, previous cases have recognized that there are situations in which it may be appropriate to deprive a detainee of clothing. See McMahon, 583 F.2d at 175 (finding no constitutional violation in depriving a pretrial detainee with suicidal tendencies of clothing). "Prisoners do retain a limited constitutional right to bodily privacy." Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993). A legitimate reason, however, may justify impinging the right. Id. Courts "continue to approach the scope of the privacy right on a case-by-case basis." Id. Cases that have established a prisoner's right to bodily privacy in this circuit involved guards forcing inmates to strip and masturbate and do not clearly establish a right to bodily privacy in the present

context. See Boxer X v. Harris, 437 F.3d 1107, 1109 (11th Cir. 2006); Fortner, 983 F.2d at 1027.

None of the conditions Plaintiff complains of were against a clearly established right at the time of the alleged violation such that Defendants would have reasonable warning that they were acting contrary to the Fourteenth Amendment. Moreover, wide-ranging deference is accorded to prison administrators. "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration." Procunier v. Martinez, 416 U.S. 396, 405 (1974). Courts accord great deference to prison administrators' judgment both because of their expertise and because "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." Id. at 548.

For these reasons, Plaintiff fails to show qualified immunity is inappropriate. Defendants sued in their individual capacities are, therefore, entitled to qualified immunity on the federal claims regarding the conditions of Plaintiff's confinement.

B. Eleventh Amendment Immunity

Defendant Couch argues he, as sheriff, is protected from suit in his

official capacity by Eleventh Amendment sovereign immunity. The United States Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). On the contrary, states and their officials, acting in official capacities, are immune from suit under section 1983 pursuant to the Eleventh Amendment, which, absent congressional abrogation,[1] "protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). Eleventh Amendment immunity from suit in federal court applies not only when the state itself is sued, but also when an "arm of the state" is sued. Id.

To determine whether a defendant is an "arm of the state," courts look to "the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Manders, 338 F.3d at 1308. An official is not categorically an "arm of the state;" rather she may be an arm of the state for certain functions and not for others. Dukes v. Georgia, 428 F. Supp. 2d 1298, 1318 (N.D. Ga. 2006). In this case, Sheriff Couch was engaged

[1] Congress did not abrogate Eleventh Amendment immunity for claims brought pursuant to section 1983. Quern v. Jordan , 440 U.S. 332, 338 (1979).

in the particular function of providing blankets and clothing to those in his custody.

After determining the particular function, courts consider four factors to determine whether the defendant is an arm of the State while engaging in that particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Manders, 338 F.3d at 1309.

The first factor leans toward a finding that the sheriff performs a state function when he provides blankets and clothing to detainees. Specifically, the duties to provide clothing and blankets to detainees are directly assigned to the sheriff, a constitutional officer of the state, by the state. Georgia state law establishes that it is "the duty of the sheriff" to furnish "medical aid, heat, and blankets." O.C.G.A. § 42-4-4(a)(2). Additionally, it is "the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him food, clothing, and any needed medical and hospital attention." O.C.G.A. § 42-5-2(a). The "governmental unit, subdivision, or agency" having custody of inmates in



AO 72A
(Rev.8/82)

county jails is the sheriff, not the county. Lake v. Skelton, 840 F.3d 1334, 1340 (11th Cir. 2016). Clothing responsibilities, therefore, are not imposed on the county but on a constitutional officer of the state. Cf. id. at 1341 (finding with respect to county jails that section 42-5-2 imposes two separate duties: the duty of the sheriff to select a provider and ensure medical care is provided and the duty of the county to pay for the medical care). Providing blankets and clothing to detainees is a duty imposed on the sheriff as a state function.

The second factor examines where Georgia law vests control. Manders, 338 F.3d at 1320. As a general matter, the sheriff's office derives its powers from the State and is largely independent from the county. Lake, 840 F.3d at 1339. Under the Georgia Constitution, the State legislature has exclusive authority to establish and control a sheriff's powers and duties. Manders, 338 F.3d at 1310; Ga. Const. art. IX, § 2, ¶ 1(c)(1). "Sheriffs are subject to the control of the Georgia legislature and are *not* county employees." Manders, 338 F.3d at 1310 (emphasis in original). The county, on the other hand, is granted no legislative power or authority over sheriffs. Id. Georgia's Constitution precludes the county from exercising authority over the sheriff. Id. at 1311. As for providing blankets and clothing, Georgia law specifically

assigns responsibility to the sheriff as mentioned above. O.C.G.A. §§ 42-4-4(a)(2), 42-5-2(a). Though the county may be required to pay for blankets, funding does not establish control. Lake, 840 F.3d at 1343 (finding the county did not control the function of feeding inmates despite paying for the food). Georgia law vests the sheriff, not the county, with the responsibility and control of blankets and clothing.

The third factor is where the entity derives its funds. "[W]hen the county is required to pay by state law and the state provides some funding, this factor 'tilt[s] . . . toward immunity.'" Id. (quoting Manders, 338 F.3d at 1324). The state pays the county a per diem rate for certain state offenders assigned to the county jails. O.C.G.A. § 42-5-50(c); Manders, 338 F.3d at 1323. State funds are therefore involved in the functions of providing clothing and blankets. The county bears the major burden of funding the sheriff's office and the jail because the State mandates it by statute. O.C.G.A. §§ 15-16-20, 36-9-5, 42-5-2, 45-4-7. As controlled by Manders and Lake, this factor favors immunity.

The final factor, responsibility for adverse judgments against the sheriff, is also controlled by Manders and Lake, where the Eleventh Circuit determined that "[a]t a minimum, this final factor does not defeat immunity." Manders,

338 F.3d at 1329. In Georgia, neither the state nor the county are required to pay adverse judgments against the sheriff. Id. at 1326-27. The sheriff pays adverse judgments against him in his official capacity out of the sheriff's office budget, which implicates both state and county funds. Id. at 1327. Eleventh Amendment immunity does not require "an actual drain on the state treasury." Id. Any federal court lawsuit that interferes with a state program or function affects the State's sovereignty and integrity. Id. at 1329. For these reasons, this factor at a minimum does not defeat immunity.

The first three factors favor immunity, and the fourth factor does not defeat immunity. For these reasons, Defendant Couch, as sheriff, is entitled to Eleventh Amendment immunity for the claims against him.

C. Official Immunity for State Law Claims

Official immunity offers public officers and employees limited protection from personal liability for discretionary actions taken within the scope of their official authority. Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001). "Under Georgia law, county law enforcement officers are entitled to official immunity from suit and liability unless they 'negligently perform a ministerial act or act with actual malice or an intent to injure when performing



AO 72A
(Rev.8/82)

a discretionary act.'" Speight v. Griggs, 579 F. App'x 757, 759 (11th Cir. 2014) (quoting Roper v. Greenway, 751 S.E.2d 351, 352 (Ga. 2013)); see also Ga. Const. art. I, § II, ¶ IX(d). "Actual malice" refers to "a deliberate intention to do wrong," which is more than simply "reckless disregard for the rights or safety of others." Murphy v. Bajjani, 647 S.E.2d 54, 60 (Ga. 2007) (quoting Merrow v. Hawkins, 437 S.E.2d 336 (Ga. 1996)). A deliberate intention to do a wrongful act can be inferred from action taken. See Mitchell v. Stewart, 26 F. Supp. 3d 1322, 1337 (M.D. Ga. 2014); Bateast v. DeKalb Cnty., 572 S.E.2d 756, 758 (Ga. Ct. App. 2002).

Plaintiff's state law claims, as clarified in his Response [20], are for assault; a breach of Defendants' duty to keep the prisoner safe and free from harm, to treat him humanely, and to refrain from oppressing him; and a breach of Defendant Couch's duty to furnish blankets and clothing to inmates. (Pl.'s Resp. to Mot. for J. on the Pleadings, Dkt. [20], at 17.) Each of these claims involve discretionary acts. "Unlike a ministerial act, a discretionary act 'calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.'" Reed v. DeKalb Cnty., 589 S.E.2d 584, 587

(Ga. Ct. App. 2003) (quoting Harvey v. Nichols, 581 S.E.2d 272, 276 (Ga. Ct. App. 2003)). The threat of force is used against a detainee at officers' discretion when they determine that it is required or justified by the circumstances. It is not a "simple, absolute, and definite" ministerial act that is carried out when clear conditions are met. Murphy, 647 S.E.2d at 57. Similarly the duty to keep a prisoner safe, treat him humanely and refrain from oppressing him is fraught with discretionary decisions. To even know what this duty means and requires in different circumstances requires the officers' deliberation and judgment. It is not a ministerial act that can be specifically directed. Finally, providing inmates blankets and clothing is also a discretionary duty. While this duty is more ministerial than the other acts, there are cases, as noted above, in which a detainee should not be given blankets and clothing, for example if the detainee exhibits suicidal tendencies. See McMahon, 583 F.2d at 175.

To be liable for their discretionary acts, Defendants must have had "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Marshall v. Browning, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011). Plaintiff fails to allege facts to support an



AO 72A
(Rev.8/82)

inference that Defendants acted with actual malice or a deliberate intention to commit a wrongful act. Defendants are therefore entitled to official immunity as to the state law claims.

## Conclusion

For the foregoing reasons, Defendants Couch, Ashley, Smith, Watson, Edwards, and Bryant's Motion for Judgment on the Pleadings [14] is **GRANTED**. Defendants Lusk, Bustamante, and Coulsay are **DISMISSED**, and the Clerk is **DIRECTED** to close the case.

**SO ORDERED**, this 26th day of July, 2017.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE



AO 72A
(Rev.8/82)